IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT LINDENMAYER and
BEVERLY LINDENMAYER,

        Plaintiffs,

v.

ALLIED PACKING & SUPPLY, INC., et al.,

        Defendants.

NO. C09-05800 TEH

ORDER GRANTING MOTION TO REMAND

This matter came before the Court on January 5, 2010, on the motion to remand filed by Plaintiffs Robert Lindenmayer ("Mr. Lindenmayer") and his wife Beverly Lindenmayer (collectively, "Plaintiffs" or "the Lindenmayers"). For the reasons set forth below, Plaintiffs' motion is GRANTED.

**BACKGROUND**

This is a tort action against Foster Wheeler LLC and dozens of other defendants seeking damages for injuries based on Mr. Lindenmayer's exposure to asbestos. Foster Wheeler removed this matter to federal court from Alameda County Superior Court on December 10, 2009. Plaintiffs moved to remand on the following day, and simultaneously moved to shorten time for the hearing on that motion, citing Mr. Lindenmayer's terminal illness.[1] The Court heard the motion on shortened time, and now decides whether to remand this action to state court.

Plaintiffs allege that Mr. Lindenmayer was exposed to asbestos while working as a machinist mate in the United States Navy aboard the USS America from 1964 to 1967.

---

[1] Mr. Lindenmayer was diagnosed with mesothelioma, and his doctor attested that there is "substantial medical doubt that he will survive more than six (6) months beyond" December 11, 2009. Decl. of Physician David M. Jablons, M.D. (Dkt. No. 13, Exh. 14), ¶ 8.

Plaintiffs bring multiple claims alleging defective design, failure to warn and other theories against Foster Williams, which confirms that it manufactured marine steam generators, including boilers and economizers, for that vessel. Because it acted under an officer or agency of the United States in manufacturing and selling that equipment, Foster Wheeler argues that federal jurisdiction is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Plaintiffs dispute federal jurisdiction and seek remand on that basis.

**LEGAL STANDARD**

Removal under federal-question jurisdiction is ordinarily permissible only where the basis for federal jurisdiction appears on the face of the complaint. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). The federal officer removal statute, 28 U.S.C. § 1442(a)(1), constitutes an exception to that rule. "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431. The statute allows for the removal to federal district court of any action against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). Allowing removal ensures that, "where federal officers can raise a colorable defense arising out of their duty to enforce federal law," they "have such defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). To satisfy section 1442(a)(1), Foster Wheeler must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) establish a causal nexus between plaintiffs' claims and acts it performed under color of federal office. *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992) (citing *Mesa v. California*, 489 U.S. 121, 124-25 (1989)). Foster Wheeler must also demonstrate that it is a "person" under the statute. *Id.*

Although other removal statutes are "strictly construe[d] . . . against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), "the Supreme Court has

mandated a generous interpretation of the federal officer removal statute," *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). "[T]he policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442 (a)(1).'" *Ariz. v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham*, 395 U.S. at 407). To justify removal, a defendant need not assert a "clearly sustainable defense," nor does he need to "win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

To fulfill the second prong – the colorable federal defense – Foster Wheeler asserts the government contractor defense recognized by the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). That defense, which "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law," *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992), is available to defendants who satisfy three requirements:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512. The first two elements "are intended to insure that it is indeed a discretionary decision on the part of the government that is being immunized," and the third requires the contractor to have "fully conveyed all information necessary to allow the government to make a fully informed decision." *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 584 (9th Cir. 1996). "[S]tripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'" *In re Hawaii Fed. Asbestos Cases*, 960 F.2d at 813. The defense applies "only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." *Id.* The conflict between state law and "an identifiable 'federal policy or interest'" must be "'significant'"

3

before ordinary tort law liability will be displaced. *Id.* at 810 (quoting *Boyle*, 487 U.S. at 507).

Although the *Boyle* test expressly applies to product liability claims premised on design defects, the Ninth Circuit has addressed its applicability in failure to warn claims:

> Whereas the government contractor's defense may be used to trump a design defect claim by proving that the government, not the contractor, is responsible for the defective design, that defense is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning . . . , [the defendant] was "acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States."

*Butler*, 89 F.3d at 586 (quoting *In re Hawaii Fed. Asbestos Cases*, 960 F.2d at 813). A defendant can therefore apply the *Boyle* test to failure to warn claims where "the government affirmatively instructed it regarding the provision of warnings." *Overly v. Raybestos-Manhattan*, No. C96-2853 SI, 1996 WL 532150, at *4 (N.D. Cal. Sept. 9, 1996). The key inquiry is whether "the specifications of [the defendant's] contract with the Navy conflicted with [the defendant's] duty to warn under state law." *Butler*, 89 F.3d at 586.

**DISCUSSION**

Plaintiffs, focusing on the second prong of the section 1442(a)(1) test, contend that Foster Wheeler's assertion of the government contractor defense does not rise to the level of a "colorable" federal defense under either the design-defect or the failure-to-warn theories. According to Plaintiffs, the Navy did not require the use of asbestos in equipment manufactured by Foster Wheeler, whose evidence only demonstrates that the Navy set performance – rather than *design* – specifications. As to the duty to warn theory, Plaintiffs claim that Foster Wheeler's witnesses only speculate that the Navy would have barred the company from issuing warnings, but offer no evidence that any attempt to issue such warnings was ever made. Foster Wheeler responds that the presentation of a colorable defense is a low burden that it has met.

4

Many district courts have assessed remand in similar contexts, and their decisions have come down on both sides of the question.[2] Those denying remand emphasize that a "defendant must only raise a 'colorable federal defense,'" and not one that is "clearly sustainable." *Curry v. Am. Standard, Inc.*, No. 08-cv-10228 (GBD), 2009 WL 308029, at *2 (S.D.N.Y. Feb. 6, 2009); *see also Kirks v. Gen. Electric Co.*, No. 08-856-SLR, 2009 WL 2970391 (D. Del. Sept. 17, 2009) (concluding that defendant raised a colorable federal defense after noting that "the provisions of the federal officer removal statute are to be construed broadly"). Others have allowed remand based on defendants' failure to show "that their contractual obligations to the government specifically prohibited them from placing warnings on their products." *Nguyen v. Allied Signal, Inc.*, No. C98-03616 SI, 1998 WL 690854, at *4 (N.D. Cal. Sept. 29, 1998); *see also Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877 (W.D. Wash. Sept. 9, 2009) (concluding "government contractor defense is not 'colorable'" where defendant failed to show "the Navy actually exercised its discretion in approving proposed warnings that conflicted with state law").

Whether or not Foster Wheeler presents a colorable federal defense hinges on its evidence. In support of its government contractor defense, Foster Wheeler submitted three statements: an affidavit by J. Thomas Schroppe, a retired Foster Wheeler executive personally involved with the Navy's procurement contracts with Foster Wheeler; an affidavit by Ben J. Lehman, a retired Navy admiral who had supervised ship overhauls and alterations and was familiar with the Navy's boiler specifications; and a declaration by Lawrence Stilwell Betts, a medical doctor and retired Navy captain who testified to the Navy's knowledge of risks associated with asbestos exposure.

Lehman attests that "only boilers especially designed and built for the propulsion of U.S. Navy combat vessels, including Foster Wheeler boilers, could be installed" on Navy ships. Lehman Aff. ¶ 3. Such boilers "were designed and manufactured in accordance with detailed specifications written, approved, and issued by the U.S. Navy," which "retained the

---

[2] Because remand orders are "not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), the Ninth Circuit and other courts of appeal have had little opportunity to provide guidance on this issue.

5

'final say' over the design of any piece of equipment." *Id.* ¶¶ 3, 5. The Navy "made the ultimate decisions, whether engineering or contractual," and drafted, approved, and maintained the military specifications – or "Mil Specs" – for boilers, which "included the nature of any communication affixed to" such equipment. *Id.* ¶¶ 5, 6, 8. As for warnings, the Navy "would not have allowed its equipment suppliers . . . to affix any warning related to any asbestos hazards on their equipment." *Id.* ¶ 14. The hazards subject to precautionary labeling were determined only by the Navy, which "would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country." *Id.* ¶¶ 11-12. "In short," Lehman attests, "the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors." *Id.* ¶ 11. The Navy would not accept equipment that failed to comply with its specifications. *Id.* ¶ 4.

According to Schroppe, "the ship design for any given class of ship would be contained in a Ship Specification ('Ship Spec')," which dictated "all boiler operating criteria, performance requirements, and maximum physical dimensions of the boiler(s)." Schroppe Aff. ¶ 5. Foster Wheeler's equipment had to comply with both the Ship Spec and the Mil Specs, "which cover all specific components of the boiler, including accessories, subcomponents, and materials required to fabricate the boilers and its components." *Id.* ¶ 6. Boiler specifications "dictated very specific material requirements" – identifying, with respect to insulation, "the material" and the "arrangement of various bricks and insulating materials on various boiler walls." *Id.* ¶ 13. Schroppe, like Lehman, attested that Foster Wheeler "would not be permitted . . . to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." *Id.* ¶ 22.

Betts, finally, delves into the Navy's knowledge of hazards associated with asbestos. He declares that the U.S. government, by "the 1940s – 1950s and thereafter," had "already recognized that the prolonged inhalation of sufficient concentration of asbestos fibers could

6

1 result in pulmonary disease," and that the government's information "far exceeded" that
2 which "possibly could have been provided by a boiler manufacturer such as Foster Wheeler."
3 Betts Decl. ¶¶ 5-6. He documents the Navy's "sound, premier state-of-the-art occupational
4 health program to control the recognized, potential health hazard" associated with asbestos
5 exposure. *Id.* ¶ 32. Given that the Navy itself "had determined what an 'acceptable asbestos
6 exposure' was," he declares that the Navy "would not, and could not, allow" each equipment
7 manufacturer to "make an additional determination of what constituted an acceptable
8 exposure." *Id.* Foster Wheeler, "at best," could only "have told personnel to follow the
9 Navy's own mandates for handling asbestos," information he characterized as "redundant."
10 *Id.* ¶ 34f.

11 Foster Wheeler and the Lindenmayers each urge the Court to follow the decisions of
12 other courts that have ruled in their favor based on substantially identical records. Foster
13 Wheeler points to *Wright v. A.W. Chesterton Co.*, in which Judge Jenkins denied plaintiffs'
14 motion to remand after Foster Wheeler removed a similar asbestos action to this district.
15 Judge Jenkins found that "the Schroppe and Lehman declarations . . . satisfie[d] the first and
16 second prongs of the *Boyle* test," as they established that "the United States Navy required,
17 and approved, reasonably precise specifications and Foster Wheeler's equipment conformed
18 to these specifications." *Wright v. A.W. Chesterton Co.*, No. C07-05403 MJJ, 2008 WL
19 512728, at *6 (N.D. Cal. Feb. 25, 2008). In so ruling, Judge Jenkins emphasized that Foster
20 Wheeler's burden was a low one: "The Court is mindful that Defendants need only present a
21 colorable federal defense to Plaintiff's claims and need not prove that the defense will be
22 meritorious." *Id.* at *7.

23 Plaintiffs direct the Court to *Holdren v. Buffalo Pumps, Inc.*, an asbestos case
24 remanded from the District of Massachusetts for lack of subject-matter jurisdiction. Foster
25 Wheeler, one of five defendants that removed the case, submitted affidavits from the same
26 three witnesses before this Court. Judge Gertner characterized her ruling as resting
27 "ultimately on what is missing from the record":
28

7

United States District Court
For the Northern District of California

> The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos on products destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings.
>
> All told, the manufacturers do not claim that the Navy ever offered them any guidance on asbestos warnings, nor that they themselves ever contemplated warning about the dangers of asbestos. Their defense, instead, rests entirely on an untested hypothetical: If they had made such a proposal, the Navy *would have* refused that recommendation. This account rings of post-hoc justification.

*Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 137 (D. Mass. 2009) (emphasis in original). While acknowledging her obligation not to assume "an unduly narrow view of federal officer removal," Judge Gertner emphasized that "the court must still satisfy itself that the defense has enough substance to trigger the right to a federal forum." *Id.* at 141. "Relaxing this standard too far, particularly in the context of a private contractor, could well err in the opposite direction – by providing a federal forum to a party whose acts were outside its federal directives." *Id.*

Noting that the "crux of the federal contractor defense is a 'significant conflict' between a federal interest and the defendant's state-law duties," the *Holdren* court observed a key distinction between design-defect and failure-to-warn claims. *Id.* at 142-43. A design-defect case presents a more "obvious conflict" with state law, in that the government's design specifications "themselves reflect a federal interest; where it is aware of potential risks in the design, the government has necessarily balanced safety and performance." *Id.* at 143. For a failure-to-warn case, "the type of conflict required by the defense may be considerably more difficult to show," because a manufacturer can typically comply "with its state-law duties to warn" without departing from "the government's design specifications and the judgments they reflect." *Id.*

With those distinctions in mind, the Court turns first to the design-defect claims against Foster Wheeler. Plaintiffs characterize the evidence as showing that the Navy had set only performance standards, not design specifications, for Foster Wheeler's equipment. The Supreme Court offered such a hypothetical in *Boyle*: if the United States, in contracting to purchase an air conditioner, had specified "the cooling capacity but not the precise manner of construction," there could be no conflict with a state law duty to include a certain safety feature. *Boyle*, 487 U.S. at 509. Contrary to Plaintiffs' assessment, however, Foster Wheeler's evidence shows that the Navy had approved "reasonably precise" *design* specifications, which dictated, among other things, what insulating material to be used. The first prong of *Boyle* is therefore met. Foster Wheeler has also demonstrated that it conformed to those specifications, based on testimony showing the Navy did not accept nonconforming equipment, and that the Navy's knowledge of the risks associated with asbestos exceeded its own. Foster Wheeler satisfies the three-factor *Boyle* test, and therefore presents a "colorable" federal defense to the design-defect claims, as required for removal jurisdiction under section 1442(a)(1).

Foster Wheeler's evidence fails to raise a colorable defense on the failure-to-warn theory, however. Foster Wheeler must show that it was complying with "reasonably precise specifications" imposed by the United States in deciding whether to provide a warning. *Butler*, 89 F.3d at 586. Its evidence does not approach that requirement. In the absence of any effort to warn about asbestos, Foster Wheeler cannot rely on the hypothetical assertion that such an effort would have been futile. Foster Wheeler offers no evidence suggesting that its failure to warn should be attributed to the Navy, and identifies no conflicts between its duties under state law and its compliance with Navy specifications. The federal government cannot have exercised its discretion to preclude Foster Wheeler from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place. Foster Wheeler's defense to the failure-to-warn claims is therefore not "colorable" and not, by itself, a sufficient basis for removal.

9

Plaintiffs represented that, should the Court find that Foster Wheeler raised a colorable federal defense to the design-defect claims but not to the failure-to-warn claims, they would waive the design-defect claims against Foster Wheeler so that the case can be remanded to state court. The Court concludes that this is the appropriate course of action.[3] There is no reason to confer federal jurisdiction over an entire action on the basis of a federal defense to claims that Plaintiffs choose not to pursue.

Plaintiffs' motion to remand is therefore GRANTED. This matter shall be remanded to Alameda County Superior Court, where Plaintiffs shall waive any claims against Foster Wheeler based on a design-defect theory of liability.

**IT IS SO ORDERED.**

Dated: 1/14/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[3] Since Plaintiffs offered to waive the design-defect claims based on the Court's conclusion that Foster Wheeler had asserted a colorable federal defense, the Court does not need to analyze whether Foster Wheeler also met the other two requirements for removal under section 1442(a)(1) (acting under a federal officer and causal nexus). *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).